IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Dr. Judith Louise Marley, | ) | C/A No. 3:08-937-CMC-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| The University of South Carolina, Samantha Hastings, Charles Bierbaur, Andrew Sorenson, and Mark Becker, jointly, severally and in the alternative, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Through this action, Plaintiff, Dr. Judith Louise Marley ("Dr. Marley" or "Plaintiff"), seeks recovery under various state and federal statutes for alleged discrimination and retaliation in employment . She also asserts multiple claims under the common law of South Carolina including four contract-based claims. All of these causes of action relate to her employment with and termination from the University of South Carolina ("the University"), which is named as a Defendant. The remaining Defendants are (or at the relevant time were) individuals with some level of supervisory authority over Plaintiff ranging from her first level supervisor to the President of the University (collectively "Individual Defendants").

For the reasons set forth below and in the Report and Recommendation of the Magistrate Judge, the undersigned concludes that Defendants are entitled to dismissal or summary judgment as to all claims. This leaves the University's conversion counterclaim for trial.[1] The matter shall proceed to mediation and trial under the schedule set forth at the conclusion of this order.

---

[1] No dispositive motion has been filed as to the counterclaims which seek recovery for Plaintiff's failure to return University property and to repay monies paid during a period she did not perform work. The first counterclaim seeks affirmative relief based on a conversion theory. The second seeks relief in the form of a set-off. The latter is rendered moot by this order.

**BACKGROUND**

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, this matter was referred to United States Magistrate Judge Joseph R. McCrorey for pre-trial proceedings and a Report and Recommendation ("Report"). On August 20, 2010, the Magistrate Judge issued a comprehensive and detailed Report recommending that Defendants' motion to dismiss and for summary judgment be granted in full, resolving all fifteen of Plaintiff's causes of action. Dkt. No. 58. The Report also noted that the University had filed counterclaims and that no dispositive motion had been filed as to those.

The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if they failed to do so. Plaintiff timely filed an objection to the Report on September 7, 2010. Dkt No. 59. The caption and content of this twenty-four page objection also purport to advance a motion for a *de novo* review of all recommendations in the Report. *Id.* at 1-2 (moving "for a *de novo* review regarding all matters objected to and all matters adverse to the Plaintiff as stated in the [Report]," purporting to object to the Report "*en toto*," and asserting a right to "plenary *de novo* review as the same is constitutionally and statutorily required"). Defendants responded to the objection on September 14, 2010, noting that Plaintiff's objection had "failed to present any viable issue that calls into question the Magistrate Judge's Report or undermines the arguments previously presented by Defendants" and suggesting the court should "summarily adopt the Report." Dkt. No. 61.

**STANDARD**

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.

*See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

The court declines Plaintiff's request to conduct a *de novo* review except as to matters for which she has presented a specific objection. To the extent such objections have been presented, the court has made a *de novo* review of the Report and underlying record. In all other respects, the court has reviewed the Report for clear error. Having done so, the undersigned concurs with the Report in its analysis and recommended disposition as to all claims.

As she describes them, Plaintiff's objections fall into three general categories: (1) arguments that the Report failed to address facts she views as favorable to her claims; (2) arguments that the Report failed to address "large portions of the record which are detrimental to Defendant[s']" position; and (3) arguments that the Report's conclusions are "selective" or "narrowly focused." *See* Dkt. No. 59 at 2 (Plaintiff's categorization of her objections). As these categories may suggest and as discussed in more detail below, Plaintiff's objections tend to be broad-based rather than

3

specific, pointing to dissatisfaction with the manner in which the Report reaches its recommendation, but failing to point to any specific errors.

Contrary to Plaintiff's suggestion, neither the Magistrate Judge nor this court need address every fact favorable to Plaintiff nor every fact adverse to Defendants where it is otherwise clear that the claims at issue are legally deficient. Likewise, neither the Magistrate Judge nor this court need address every legal argument advanced by either party.

For example, there is no need to address the various facts which might support a *prima facie* case of discrimination where the court finds that these requirements are satisfied (as the Magistrate Judge found with respect to some of Plaintiff's claims). Instead, in such a circumstance, the court need only address whether Defendants have proffered a legitimate reason for the allegedly discriminatory action and, if so, whether Plaintiff has presented sufficient facts to raise a jury question as to whether the proffered reason is pretextual. Adequate discussion of these matters does not require the court to address every argument raised by each side. Thus, the court declines to find error based on Plaintiff's broadly stated arguments that the Report erred in failing to address all facts or all arguments of either party.

Turning to Plaintiff's more specific objections, the court first notes that those objections relate only to some of Plaintiff's claims including her: (1) Title VII claim for wage discrimination (Dkt. No. 59 at 6-9); (2) Section 1983 claim for a due process violation (*id.* at 10-17); (3) four contract-based claims (*id.* at 17-18 (addressing contract-based claims collectively)); (4) Title VII sexual harassment claim (*id.* at 18-19); (5) claim under the Americans with Disabilities Act ("ADA") (*id.* at 19-22); and (6) State Whistleblower Act claim (*id.* at 22-23). Plaintiff's arguments as to each of these claims are discussed below.

**I.      Title VII --Gender Based Wage Discrimination**

4

The Report accepts that Plaintiff has set forth a *prima facie* case of wage discrimination. The court, therefore, construes Plaintiff's objection as a challenge to the recommendation that the court find that Plaintiff had failed to present evidence that the University's stated neutral reason for the pay disparity was pretextual. *Id.* at 6 ("no where in the record is there any evidence to support the conclusion that a jury would necessarily come to the same conclusion" as Defendants; "there is nothing in the record that proves or substantiates [that the University has] met its burden in its 'honest error defense.'").

The only specific evidence to which Plaintiff directs the court is, however, relevant only to her *prima facie* case, a step in the proof process as to which the Report recommends a finding in her favor. *See id.* at 7-8 (referring to evidence that Plaintiff was paid $3,000 less per year than a similarly, or arguably less qualified male).[2] Plaintiff fails to direct the court to any specific evidence which would draw into doubt the University's stated reasons for its decision to offer (and pay) her colleague $3,000 more than it offered (and paid) Plaintiff. Mere argument that the jury might disbelieve Defendants is not enough to establish pretext. *See generally Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000) (noting that fact finder may find unlawful discrimination where plaintiff establishes both a *prima facie* case and presents "*sufficient evidence* to find that the employer's asserted justification is false"– emphasis added); *Price v. Thompson*, 380 F.3d 209, 215 (4th Cir. 2004) (finding evidence insufficient to present an issue for the jury where the evidence of pretext was "equivocal at best" and noting that mere error by the employer does not establish pretext).

---

[2] To the extent Plaintiff also refers to and relies on the University's failure to pay her the same moving expenses as her male colleague ($2,500), her objection is inadequate in that it fails to address the Report's reason for recommending dismissal of this aspect of her wage claim: her failure to include reference to it in her administrative charge. *See* Report at 18.

5

For the reasons set forth above, Plaintiff's objections are not well founded. To the contrary, for reasons addressed in the Report, which are adopted and incorporated herein (Dkt. No. 58 at 17-18), the court finds that Plaintiff has failed to proffer evidence from which a reasonable jury could conclude that the University's proffered reasons for the pay disparity are pretextual. The University, and all other Defendants to whom this claim may be addressed, are, therefore, entitled to summary judgment on Plaintiff's disparate pay claims.[3]

## II. Section 1983 Claim – Violation of Substantive and Procedural Due Process

In her lengthy objection to the Report's recommendation as to her due process claim, Plaintiff refers to various allegedly unfair actions which led up to her termination (or non-renewal of her contract). For example, she refers to what she feels were unfair ratings or an unfair ratings system (which deemed her performance, overall, as unsatisfactory after her third year despite her receipt of one "excellent" and two "goods" on her first year evaluation). Dkt. No. 59 at 12-13 (arguing, *inter alia*, that the final evaluation was "a *per se* violation of the Plaintiff's due process rights as this impacts then important and future property rights"). She also refers to a denial of short-term disability benefits during this period.

What Plaintiff does not offer is any adequate legal challenge to the recommendation that this court find she lacked a property interest in her teaching duties, teaching experience, or continued employment in a tenure-track position. *See* Report at 26-27. Neither has she directed the court to evidence or law sufficient to establish that the process she was provided, which included notice of her employer's concerns and an opportunity to respond, was inadequate to satisfy any due process

---

[3] To the extent Plaintiff intends to include her Equal Pay Act claim in this objection, the objection is rejected for the same reasons as addressed here: Plaintiff has failed to direct the court to any evidence sufficient to raise a jury issue as to the truthfulness of the University's stated, gender-neutral reasons for the pay disparity. The claims against the Individual Defendants are dismissed for additional reasons set forth in the Report.

6

rights to which she might have been entitled if a property interest did exist. *Id.* at 27.[4] The court, in any event, agrees with both the reasoning and recommendation of the Report with regard to Plaintiff's Section 1983 claim.

## III.     Contract-Based Claims

Plaintiff argues that the recommendation that Defendants' motion for summary judgment be granted as to her four contract-based claims is in error because it rests on a requirement that she "produce a formal, written contract executed by the parties" in order to pursue her contract claim. Dkt. No. 59 at 17. This argument misconstrues the Report which notes, first, that Plaintiff failed to produce evidence of a binding six-year contract and, second, that the evidence which was presented (primarily her appointment letter) supported only the conclusions that she was hired for a nine-month, tenure-track position which was subject to tenure, promotions, and other policies and procedures. One of the relevant policies was that the position was probationary until tenure was granted, a period of up to seven years. During the probationary period, appointments were on an annual basis and the University could decline to renew the appointment on proper advance notice

---

[4] Plaintiff cites two cases for the proposition that, if the public employer grants a hearing, then that hearing must comport with due process. Neither case supports this proposition. For example, in *Temple v. Medical Univ. of South Carolina*, 2004 WL 3317660 (DSC 2004), the court held that the grant of a hearing which was not required was irrelevant to the constitutional claim:

> [P]laintiff's contention that the Provost granted her a gratuitous due process hearing and MUSC failed to provide it is irrelevant. Plaintiff's contention that the review MUSC did provide deviated from the Faculty Handbook is irrelevant as well. Plaintiff's due process claim fails as a matter of law because plaintiff can establish no constitutional right to any review of MUSC's non-renewal decision.

*Id.* at *5. The court can find no discussion relevant to Plaintiff's proffered proposition in her other cited decision. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) (holding non-tenured professor had no right to a hearing before non-renewal of his contract).

7

as occurred in this case. Thus, there was no contract promising employment for a full six-year period, even if the normal practice was to renew contracts for professors on the tenure track.

In any event, for reasons addressed in the Report, Plaintiff has failed to present evidence from which a reasonable juror could find a breach of contract *even if* the terms of her employment suggested renewal would be offered during the probationary period so long as performance was satisfactory. For example, although Plaintiff asserts that her "qualifications and skill were never questioned," she does not direct the court to any evidence contrary to that summarized in the Report which addresses the reasons she was removed her from teaching duties, given an unsatisfactory rating, and not offered a renewal of her contract. The underlying concerns relate primarily to Plaintiff's actual performance, rather than to her qualifications or skill level. For example, Plaintiff's supervisors received reports of poor teaching from at least twenty students shortly after Plaintiff returned to teaching duties in the Spring of 2007 as well as Plaintiff's failure to respond to two emails from her supervisor (one sent on March 13, 2007, and the other sent on March 27, 2007) asking her to address these concerns. Dkt. No. 58 at 8 ¶¶ 19-22.[5] Plaintiff has failed to direct the court to any evidence which would draw either of these factual statements into doubt.

## IV.  Title VII – Sexual Harrassment

In her objection to the recommendation that summary judgment be granted on her claim for sexual harassment, Plaintiff refers, obliquely, to unwelcome "comments and breast touching." She does not, however, direct the court to any evidence that would suggest either the comments or the

---

[5] *See also* Dkt. No. 58 (Report) at 30 (explaining that the reason Plaintiff did not teach during the summer of 2006 was the result of her unilateral announcement, given on a Friday before classes were to begin, that she would be unable to teach the assigned class due to illness); *id.* at 6 ¶ 12 (related summary of evidence); *id.* at 30 (explaining clerical error relating to Plaintiff's decision not to teach the summer course temporarily "terminated her regular employment," although that error was corrected and benefits reinstated such that Plaintiff suffered no resulting injury).

single incident of touching was other than as described in the Report which refers to four instances in which Plaintiff's supervisor, Samantha Hastings, referred to Plaintiff as "baby" or "sweetie" and one instance in which Hastings touched Plaintiff's breast while "breaking the embrace" following a hug. Report (Dkt. No. 58) at 13. As to the breast touching, Plaintiff conceded in her deposition that she had no idea whether the touch was incidental contact. She also volunteered that she did not "think it was intentional." She also conceded that Hastings sometimes called Plaintiff's male colleagues "sweetie" and was also known to hug the male colleagues.

Whether considered individually or collectively, these alleged incidents are not sufficiently egregious to support a hostile environment claim. *See* Dkt. No. 58 at 14-15 (listing numerous cases which found far more egregious conduct insufficient to support a hostile environment claim). Moreover, there is no showing that the comments and actions, even if inappropriate, were directed to Plaintiff because of her gender. The court, therefore, adopts the rationale and recommendation of the Report as to this claim.

## V. Americans with Disabilities Act

The Report recommends dismissal of Plaintiff's ADA claim based on the conclusions that: (1) Plaintiff's claim arises under Title I of the ADA (covering employment); and (2) the Eleventh Amendment bars private suits against states and their agencies for monetary damages under Title I of the ADA. Dkt. No. 58 at 21-22. In her objections, Plaintiff offers only statements that her claims encompass both Titles I and II of the ADA and that "absolute immunity" should not be available for intentional violations of the ADA.

These arguments are not persuasive. First, it is clear that Plaintiff's ADA claim is based on her employment relationship rather than some distinct right to access public facilities and benefits. *See, e.g.,* Dkt. No. 59 at 21 (asserting error in Report's failure to "go through the analysis of

9

identifying the Plaintiff's status as an employee of [the University], and as such, protected by the ADA").[6] For reasons stated in the Report, the undersigned concludes that such a claim arises only under Title I. *See* Dkt. No. 58 at 21-22 (addressing basis for conclusion that claims arise under Title I).[7] It follows that the Eleventh Amendment bars Plaintiff from seeking monetary damages from the University as to this claim. *Id.* To the extent Plaintiff is pursuing the ADA claim against the Individual Defendants, her claim is barred for additional reasons addressed in the Report. *Id.* n. 12.[8]

The court, therefore, adopts the Report's rationale and recommendation that (1) Plaintiff's ADA claim be dismissed as barred by the Eleventh Amendment (and inappropriately pursued against the Individual Defendants), and, alternatively, that Defendants' motion for summary judgment be granted because Plaintiff has failed to proffer evidence sufficient to support either a claim for wrongful termination or failure to accommodate under the ADA.

## VI.  State Whistleblower Claim

The court concurs with the Report's conclusions that (1) Plaintiff is excluded from the statutory definition of "Employee" because she is a "faculty" member at a four-year post-secondary

---

[6] In objecting to the Report's recommendation as to her claim under the Americans with Disabilities Act, Plaintiff focuses on "Defendants'" alleged failure to accommodate disabilities which she began to experience in the summer of 2006. She argues, in particular, that Defendants failed to accommodate her need for extensions to prepare her third-year tenure review packet and also failed to provide "voice activated software" until October 2007, after the tenure review committee had met and after she had been removed from teaching duties. Thus, it is clear that the focus of Plaintiff's ADA allegations is on events intricately linked with her employment status.

[7] As the Report notes, this is an area in which the circuit courts have split and the Fourth Circuit has not yet spoken. Dkt. No. 58 n.10. The undersigned, however, agrees with the Report's prediction that the Fourth Circuit will find litigation such as the present to raise claims only under Title I.

[8] Plaintiff does not expressly address this point, but does refer to "Defendants" collectively in addressing her ADA claim.

10

educational institution,[9] and (2) Plaintiff has failed to present evidence sufficient to support a finding that her statement of concern to Bierbauer relating to possible grant fraud satisfies the statutory definition of "Report."[10] *See* Dkt. No. 58 at 6 ¶ 11 (facts), 28-29 (discussion).[11]

## VII. Other Claims

Plaintiff's objections are not specific as to any other claims. The court has, therefore, reviewed the remainder of the Report for clear error and finds none. The court adopts the Report in full and grants Defendants' motion for dismissal or summary judgment, resolving all claims asserted by Plaintiff. Because this resolves all claims asserted by Plaintiff, it necessarily forecloses any set-off, thus resolving one of the University's counterclaims. This order does not, however, resolve or address the University's counterclaim for conversion which remains for trial.

### TRIAL SCHEDULE

**TRIAL SCHEDULE**

The pretrial schedule shall be as follows:

1. No later than **October 15, 2010**, the parties shall advise the court as to the anticipated length of trial.

2. Mediation, pursuant to Local Civil Rules 16.04 – 16.12, shall be completed in this case on or before **November 12, 2010.** *See* Standing Order to Conduct Mediation 4:00-mc-5001,

---

[9] *See* S.C. Code Ann. § 8-27-10(2) (defining "Employee" as excluding persons enumerated in Section 8-17-370); S.C. Code Ann. § 8-17-370(10) (listing the following as being beyond the scope of the section "teaching or research faculty . . . at a four-year post-secondary educational institution").

[10] *See* S.C. Code Ann. § 8-27-10(4)(defining report as a "written document" containing specified categories of information); S.C. Code Ann. § 8-27-20 (providing protection to an employee who "files a report with an appropriate authority of wrongdoing").

[11] Plaintiff argues, *inter alia*, that no specific form for the Report is required. She does not, however, direct the court to any evidence that she "filed" any "written document" with any "appropriate authority."

11

which sets forth mediation requirements and is found on the court's website under Judge Currie's forms (http://www.scd.uscourts.gov).

3. No later than **November 19, 2010**, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3) pretrial disclosures. Within fourteen (14) days thereafter, a party shall file and exchange Fed. R. Civ. P. 26(a)(3) objections, any objections to use of a deposition designated by another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(4). *See* Local Civil Rule 30.03(J) (video deposition additional requirements).

4. Motions in limine must be filed at least three weeks prior to jury selection.

5. Parties shall furnish the court pretrial briefs five (5) business days prior to the date set for jury selection (Local Civil Rule 26.05).[12] Attorneys shall meet at least five (5) business days prior to the date set for submission of pretrial briefs for the purpose of exchanging and marking all exhibits. *See* Local Civil Rule 26.07.

6. This case shall be called for trial during the **January 2011** term of court.

## CONCLUSION

For the reasons set forth above, the court adopts the reasoning and recommendations of the Report and grants, in full, Defendants' motion to dismiss and for summary judgment (Dkt. No. 50). This leaves the University's first counterclaim for trial. As to this claim, the matter shall proceed to trial under the schedule set forth above.

**IT IS SO ORDERED.**

    s/ Cameron McGowan Currie
    CAMERON MCGOWAN CURRIE
    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 27, 2010

---

[12] Judge Currie requires that pretrial briefs be filed with the Clerk of Court as part of the public record and served on opposing parties.